ST. PAUL'S FLAX HILL CO-OPERATIVE *v.* ZENA MAE JOHNSON ET AL.
(AC 31288)

Harper, Robinson and Schaller, Js.

Argued September 7—officially released November 2, 2010

*Sean C. Donohue,* for the appellant (defendant Larry K. Johnson).

*Frederic S. Brody,* for the appellant (named defendant).

*Steven G. Berg,* for the appellee (plaintiff).

SCHALLER, J. The defendant Larry K. Johnson[1] appeals from the judgment of the trial court in favor of the plaintiff, St. Paul's Flax Hill Co-operative, in its summary process action alleging, among other things, that the defendant had no legal right or privilege to occupy the premises at issue. The defendant claims that the trial court should have dismissed the summary process action (1) on the ground that the court lacked subject matter jurisdiction in that the plaintiff simultaneously served a pretermination notice and notice to quit, and (2) on the ground that the plaintiff failed to return the complaint within three days of the return day pursuant to General Statutes § 47a-23a.[2] We affirm the judgment of the trial court.

The following facts and procedural history are relevant to the defendant's appeal. The premises owned by the plaintiff is a housing cooperative sponsored and subsidized by the United States Department of Housing

---

[1] Johnson is the adult son of the defendant Zena Mae Johnson. In its summary process action, the plaintiff alleged, and the court found, that Zena Mae Johnson had violated her lease by permitting an unauthorized person, Larry K. Johnson, to reside in the premises. The court rendered judgment of immediate possession in favor of the plaintiff on that count but ruled that "equity prevents the issuance of an execution as to Zena [Mae] Johnson." Zena Mae Johnson does not appeal from that ruling. Accordingly, we refer in this opinion to Larry K. Johnson as the defendant.

[2] The defendant also claims that the trial court improperly (1) concluded that his prior criminal conviction for sexual assault rose to the level of being a serious nuisance within the meaning of General Statutes § 47a-15, and (2) concluded that his occupation of the premises was in violation of United States Department of Housing and Urban Development (HUD) notice requirements that owners deny admission to federally assisted housing to any member of the household subject to a lifetime registration requirement under a state sex offender registration program.

Because we affirm the judgment in favor of the plaintiff on the ground that the defendant never had the right or privilege to occupy the premises, we do not reach the claims relating to the separate count asserting a violation of the HUD regulations.

and Urban Development (HUD) and is subject to regulation by that agency. The plaintiff served the defendant with a pretermination notice dated November 18, 2008, asserting that his "unauthorized occupation of [the premises would] be terminated effective December 12, 2008." He was advised therein that he may correct the claimed violation within twenty-one days by moving out of the unit.[3] On that same date, he was also served with a notice to quit possession on or before December 12, 2008, on the ground that he had no right to occupy the premises. The defendant did not quit the premises, and the plaintiff commenced a summary process action by service of process on February 7, 2009. In count three of its complaint, the plaintiff alleged that the written lease and occupancy agreement prohibited occupancy by persons who were not approved by the board and that the defendant had no legal right to occupy the premises in that he was not a party to the lease or occupancy agreement.[4]

The defendant filed a pro se appearance on February 23, 2009. In his answer, he admitted that he had received the pretermination notice and notice to quit. On April 22, 2009, the defendant filed a motion to dismiss on the ground that the simultaneous service of the pretermination notice and notice to quit deprived him of the fifteen day cure period required by General Statutes § 47a-15 and deprived the court of subject matter jurisdiction. The court denied the motion in an oral decision on April 23, 2009. On April 28, 2009, counsel for the defendant entered an appearance and, on May 7, 2009, moved to

---

[3] This would have had the effect of curing Zena Mae Johnson's lease violation. See footnote 1 of this opinion.

[4] Counts one and two pertained to Zena Mae Johnson, who is not a party to this appeal. See footnote 1 of this opinion. In count four, the plaintiff alleged that the defendant's occupancy violated a HUD requirement pertaining to the defendant's prior criminal conviction. See footnote 2 of this opinion.

dismiss for want of subject matter jurisdiction raising the same ground, which the court again denied.

Zena Mae Johnson, the defendant's mother, had entered into an occupancy agreement with the plaintiff in 1977. On the basis of the testimony and evidence presented at trial, the court found that the defendant was not a party to that agreement. He was never approved as an occupant by the plaintiff or by HUD.[5] He occupied the premises for an undetermined period of time and, at some point, his occupancy was interrupted by his incarceration. The court concluded that the defendant was not a lawful tenant and was not entitled to a pretermination notice. The court found in favor of the plaintiff and ordered the defendant evicted from the premises. See footnote 1 of this opinion. This appeal followed.

I

The defendant claims that the trial court improperly refused to dismiss the summary process action for lack of subject matter jurisdiction because the plaintiff, alleging a violation of § 47a-15, simultaneously served a pretermination notice and notice to quit on him,[6] thus

---

[5] Pursuant to the federal regulations that govern the premises, the plaintiff's approval was required to add any family members as occupants. "A lease shall be entered into between the [Public Housing Authority (PHA)] and each tenant of a dwelling unit which shall contain the provisions described hereinafter. . . . The composition of the household as approved by the PHA (family members and any PHA-approved live-in-aide). The family must promptly inform the PHA of the birth, adoption or court-awarded custody of a child. The family must request PHA approval to add any other family member as an occupant of the unit." 24 C.F.R. § 966.4 (a) (1) (v).

[6] General Statutes § 47a-15 provides in relevant part: "Prior to the commencement of a summary process action, except in the case in which the landlord elects to proceed under sections 47a-23 to 47a-23b, inclusive, to evict based on nonpayment of rent, on conduct by the tenant which constitutes a serious nuisance or on a violation of subsection (h) of section 47a-11, if there is a material noncompliance with section 47a-11 which materially affects the health and safety of the other tenants or materially affects the physical condition of the premises, or if there is a material noncompliance by the tenant with the rental agreement or a material noncompliance with

rendering the notice to quit defective. The plaintiff argues that although it served gratuitously a pretermination notice on the defendant, it was not required to do so because he was not a tenant. We agree with the plaintiff that the defendant was not entitled to a pretermination notice pursuant to § 47a-15 and accordingly affirm the judgment of the trial court.

Before addressing the specifics of the defendant's claim, it is helpful to identify the legal principles regarding summary process actions. "Summary process is a special statutory procedure designed to provide an expeditious remedy. . . . It enable[s] landlords to obtain possession of leased premises without suffering the delay, loss and expense to which, under the common-law actions, they might be subjected by tenants wrongfully holding over their terms. . . . Summary process statutes secure a prompt hearing and final determination. . . . Therefore, the statutes relating to summary process must be narrowly construed and strictly followed." (Citations omitted; internal quotation marks omitted.) *Young* v. *Young*, 249 Conn. 482, 487–88, 733 A.2d 835 (1999). It must be noted, however, that based on the language of General Statutes § 47a-23,[7] "[n]o leasehold interest is required for dispossession under § 47a-23. [Otherwise] . . . trespassers and

the rules and regulations adopted in accordance with section 47a-9, and the landlord chooses to evict based on such noncompliance, the landlord shall deliver a written notice to the tenant specifying the acts or omissions constituting the breach and that the rental agreement shall terminate upon a date not less than fifteen days after receipt of the notice. . . ."

[7] General Statutes § 47a-23 (a) provides in relevant part: "When the owner or lessor . . . desires to obtain possession or occupancy of . . . any apartment in any building . . . and (2) when such premises, or any part thereof, is occupied by one who never had a right or privilege to occupy such premises . . . such owner or lessor . . . shall give notice to each lessee or occupant to quit possession or occupancy of such . . . apartment . . . at least three days before the termination of the rental agreement or lease, if any, or before the time specified in the notice for the lessee or occupant to quit possession or occupancy."

squatters would enjoy far more rights than legitimate tenants. Section 47a-23 provides for dispossession against any person who has no right or privilege to occupy such premises . . . ." (Internal quotation marks omitted.) *Urban* v. *Prims*, 35 Conn. Sup. 233, 234, 406 A.2d 11 (1979). Our Supreme Court has stated that "[a]s a condition precedent to a summary process action, proper notice to quit [pursuant to § 47a-23] is a jurisdictional necessity." (Internal quotation marks omitted.) *Bayer* v. *Showmotion, Inc.*, 292 Conn. 381, 388, 973 A.2d 1229 (2009).

We now identify the applicable standard of review. The defendant's "motion to dismiss . . . properly attacks the jurisdiction of the court, essentially asserting that the plaintiff cannot as a matter of law and fact state a cause of action that should be heard by the court. . . . A motion to dismiss tests, inter alia, whether, on the face of the record, the court is without jurisdiction. . . . [O]ur review of the court's ultimate legal conclusion and resulting [determination] of the motion to dismiss [is] de novo." (Internal quotation marks omitted.) *Waterbury Twin, LLC* v. *Renal Treatment Centers–Northeast, Inc.*, 292 Conn. 459, 466–67, 974 A.2d 626 (2009).

Pursuant to § 47a-15, before a landlord may proceed with a summary process action, except in those situations specifically excluded, the landlord must first deliver a notice to the tenant specifying the alleged violations and offer the tenant a fifteen day period to remedy. See *Housing Authority* v. *DeRoche*, 112 Conn. App. 355, 361–62, 962 A.2d 904 (2009); *Housing Authority* v. *Martin*, 95 Conn. App. 802, 813, 898 A.2d 245, cert. denied, 280 Conn. 904, 907 A.2d 90 (2006); see also *Kapa Associates* v. *Flores*, 35 Conn. Sup. 274, 408 A.2d 22 (1979) (decided under General Statutes [Rev. to 1979] § 47a-15, requiring thirty day notice period). "The legislative purpose [of a pretermination or *Kapa* notice] is

to discourage summary evictions against first offenders . . . ." *Marrinan* v. *Hamer*, 5 Conn. App. 101, 104, 497 A.2d 67 (1985). The salutary purpose of this notice is to apprise the tenant of the information he needs to protect himself against premature, discriminatory or arbitrary eviction. See *Jefferson Garden Associates* v. *Greene*, 202 Conn. 128, 143, 520 A.2d 173 (1987). "This notice provision has been interpreted to be separate from and preliminary to the maintenance of a summary process action pursuant to . . . § 47a-23." *Housing Authority* v. *Harris*, 225 Conn. 600, 605, 625 A.2d 816 (1993); *Ossen* v. *Kreutzer*, 19 Conn. App. 564, 569, 563 A.2d 741 (1989); see also *Bridgeport* v. *Barbour-Daniel Electronics, Inc.*, 16 Conn. App. 574, 593, 548 A.2d 744 (*Borden, J.*, dissenting) ("a § 47a-15 notice is a necessary precondition to the landlord's right to serve a notice to quit arising out of the tenant's material noncompliance"), cert. denied, 209 Conn. 826, 552 A.2d 432 (1988).

A pretermination notice pursuant to § 47a-15 does not have the effect of terminating a tenancy or of altering the relationship of the landlord and tenant. See *Kapa Associates* v. *Flores*, supra, 35 Conn. Sup. 278. In contrast, it is well established that service of a notice to quit possession pursuant to § 47a-23 is typically an unequivocal act terminating a lease agreement with a tenant. See *Thompson* v. *Coe*, 96 Conn. 644, 651, 115 A. 219 (1921) ("[w]e think the service of the notice to quit was a definite, unequivocal act of the lessor showing the exercise of her option to terminate, and that it took effect on . . . the date the notice was served"); *Sproviero* v. *J.M. Scott Associates, Inc.*, 108 Conn. App. 454, 458 n.2, 948 A.2d 379 ("[s]ervice of a notice to quit possession is typically a landlord's unequivocal act notifying the tenant of the termination of the lease" [internal quotation marks omitted]), cert. denied, 289 Conn. 906, 957 A.2d 873 (2008). It would be inconsistent

with the salutary purpose of § 47a-15 to condone simultaneous delivery of a pretermination notice and a notice to quit on a tenant.

The issue in the present appeal is whether the defendant, an adult person whose occupancy was not approved by the plaintiff when such approval was required and who was not a party to the written lease and occupancy agreement, is entitled to a pretermination notice pursuant to § 47a-15. This issue "raises a question of statutory construction, which is a [question] of law, over which we exercise plenary review. . . . The process of statutory interpretation involves the determination of the meaning of the statutory language as applied to the facts of the case, including the question of whether the language does so apply. . . .

"When construing a statute, [o]ur fundamental objective is to ascertain and give effect to the apparent intent of the legislature. . . . In seeking to determine [the] meaning [of a statute], General Statutes § 1-2z directs us first to consider the text of the statute itself and its relationship to other statutes. If, after examining such text and considering such relationship, the meaning of such text is plain and unambiguous and does not yield absurd or unworkable results, extratextual evidence of the meaning of the statute shall not be considered. . . . The test to determine ambiguity is whether the statute, when read in context, is susceptible to more than one reasonable interpretation." (Citations omitted; internal quotation marks omitted.) *Saunders* v. *Firtel*, 293 Conn. 515, 525, 978 A.2d 487 (2009).

Section 47a-15 is set forth in chapter 830 of the General Statutes. Section 47a-15 requires that "the landlord shall deliver a written notice to the *tenant* specifying the acts or omissions constituting the breach and that the rental agreement shall terminate upon a date not less than fifteen days after receipt of the notice. . . ."

(Emphasis added.) General Statutes § 47a-1 contains definitions "[a]s used in this chapter and sections 47a-21, 47a-23 to 47a-23c, inclusive . . . ." Therein, "tenant" is defined as "the lessee, sublessee or person entitled under a rental agreement to occupy a dwelling unit or premises to the exclusion of others or as is otherwise defined by law." General Statutes § 47a-1 (*l*).

On the basis of the plain language of the statute, we conclude that the protections of § 47a-15 do not inure to the defendant in this case. The defendant was not a tenant. The summary process complaint states unequivocally that the defendant had "no legal right to occupy the [p]remises," as did the notice to quit. The defendant, having no right or privilege to occupy the premises, was not entitled to a separate pretermination notice pursuant to § 47a-15 because he could not remedy the violation except by his quitting the premises. Accordingly, the defendant's claim that the notice to quit was rendered defective because the plaintiff served simultaneously a pretermination notice fails because § 47a-15 does not apply to him.[8] We find no merit in the defendant's claim that even if the plaintiff served a pretermination notice on him gratuitously, he is entitled to the

---

[8] Insofar as the defendant argues that the simultaneous delivery of the pretermination notice and notice to quit rendered defective the notice to quit served on Zena Mae Johnson, he does not have standing to assert such a claim. "The issue of standing implicates the court's subject matter jurisdiction. . . . Standing focuses on the party seeking to be heard and not on the issues that party wants to have heard. . . . The question of standing does not involve an inquiry into the merits of the case. . . . It merely requires allegations of a colorable claim of injury to an interest that is arguably protected by [a] statute or common law." (Internal quotation marks omitted.) *McGinty* v. *McGinty*, 66 Conn. App. 35, 38, 783 A.2d 1170 (2001) (holding that plaintiff mother did not have standing to assert right that belonged to her minor child).

The defendant attempts to stand in the shoes of Zena Mae Johnson, the lessee, who has been a continuous tenant for over thirty years and who is entitled to the additional protection afforded by § 47a-15. Zena Mae Johnson is not a party to this appeal; see footnote 1 of this opinion; and the defendant cannot assert a claim that pertains to her but not to him.

additional protection of § 47a-15. Additionally, we note that the defendant was afforded twenty-one days from the date of his notice to quit, and he makes no claim that the notice to quit was otherwise defective in the manner of its delivery or in its content.

We conclude that the trial court properly refused to dismiss because the notice to quit was not defective.

## II

The defendant also claims that the trial court should have dismissed the action on the ground that the plaintiff failed to return the complaint within three days of the return day pursuant to § 47a-23a.[9] He argues that this failure goes to the subject matter jurisdiction of the trial court. In response, the plaintiff argues that no motion to dismiss was filed on that ground. We conclude that a late return pursuant to § 47a-23a does not implicate the subject matter jurisdiction of the trial court.

The following additional facts and procedural history are relevant to the defendant's claim. The summons and complaint bear a return date of February 20, 2009. The plaintiff returned the process to court on February 19, 2009. On April 22, 2010, the defendant filed a motion to dismiss, raising only the defective notice to quit ground discussed in part I of this decision. At oral argument on April 23, 2009, the defendant, who was arguing

---

[9] General Statutes § 47a-23a (a) provides in relevant part: "If, at the expiration of the three days prescribed in section 47a-23, the lessee or occupant neglects or refuses to quit possession or occupancy of the premises, any commissioner of the Superior Court may issue a writ, summons and complaint which shall be in the form and nature of an ordinary writ, summons and complaint in a civil process, but which shall set forth facts justifying a judgment for immediate possession or occupancy of the premises and make a claim for possession or occupancy of the premises. . . . Such complaint may be made returnable six days, inclusive, after service upon the defendant and shall be returned to court *at least three days before the return day*. . . ." (Emphasis added.)

pro se, attempted to raise the claim, for the first time, that the plaintiff had failed to return the complaint within three days of the return day.[10] The court noted that this ground was not raised in the written motion that he had submitted to the court and denied the motion to dismiss on the ground raised therein. On May 7, 2009, counsel for the defendant moved to dismiss, asserting only the defective notice to quit as his ground for dismissal. Only in his memorandum of law did the defendant, in passing, raise the issue of the late return, arguing that such defect implicated the court's subject matter jurisdiction. In its ruling on June 23, 2009, the court noted that, regarding the question of the late return, the defendant's motion was untimely and that the defect was voidable.

The plaintiff's argument that the issue of the late return was not squarely before the trial court is of no moment because "it is well established that a reviewing court properly may address jurisdictional claims that neither were raised nor ruled on in the trial court. . . . Indeed, [o]nce the question of lack of jurisdiction of a court is raised, [it] must be disposed of no matter in what form it is presented." (Internal quotation marks omitted.) *In re DeLeon J.*, 290 Conn. 371, 376, 963 A.2d 53 (2009).

This court has held that late return of process pursuant to § 47a-23a renders a summary process action voidable and subject to dismissal upon the defendant's timely motion. *Arpaia* v. *Corrone*, 18 Conn. App. 539, 540–41, 559 A.2d 719 (1989). Otherwise, the defendant waives the jurisdictional defect. Id., 541. "Unlike the situation with subject matter jurisdiction, a party waives the right to dispute personal jurisdiction unless

---

[10] Appellate courts may take judicial notice of files of the trial court in the same or other cases. *State* v. *Adams*, 117 Conn. App. 747, 749 n.3, 982 A.2d 187 (2009).

that party files a motion to dismiss within thirty days of the filing of an appearance. . . . Personal jurisdiction is not like subject matter jurisdiction, which can be raised at any time and by the court on its own motion. . . . Unless the issue of personal jurisdiction is raised by a timely motion to dismiss, any challenge to the court's personal jurisdiction over the defendant is lost." (Internal quotation marks omitted.) *Rock Rimmon Grange # 142, Inc.* v. *The Bible Speaks Ministries, Inc.*, 92 Conn. App. 410, 416, 885 A.2d 768 (2005); see also Practice Book §§ 10-30 and 10-32.

Because the defendant can waive the jurisdictional defect of a late return in a summary process action, it does not implicate the court's subject matter jurisdiction. The earliest possible objection to the late return occurred on April 23, 2009, which was more than thirty days after the date that the defendant entered his pro se appearance on February 23, 2009. Accordingly, we conclude that the trial court's refusal to dismiss on that ground was not improper.

The judgment is affirmed.

In this opinion the other judges concurred.