******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

# HOUSING AUTHORITY OF THE CITY OF NEW LONDON *v.* BRUCE STEVENS
## (AC 43471)

Alvord, Clark and Norcott, Js.

*Syllabus*

The plaintiff housing authority sought, by way of summary process, to regain possession of certain premises leased to the defendant tenant. The plaintiff served on the defendant a notice to quit possession of the premises alleging that the defendant's conduct constituted a serious nuisance under the applicable statute (§ 47a-15 (B) and (C)). Thereafter, the plaintiff commenced this summary process action by serving on the defendant a summons and complaint. The defendant filed an answer and special defenses alleging, among other things, that he was entitled to an accommodation because of his psychiatric disability. Subsequently, the defendant filed a motion to dismiss for lack of subject matter jurisdiction because the plaintiff had not issued a pretermination notice. The trial court rendered judgment of possession in favor of the plaintiff on the basis of the defendant's violation of § 47a-15 (C) and denied the defendant's motion to dismiss, from which the defendant appealed to this court. *Held*:

1. The trial court had subject matter jurisdiction over this summary process action: the notice to quit issued by the plaintiff, which complied with statutory requirements (§ 47a-23), provided the court with jurisdiction over the plaintiff's claims; moreover, given that the plaintiff alleged that the defendant's conduct constituted a serious nuisance, the plain and unambiguous language of § 47a-15 made clear that the plaintiff was not required to serve a pretermination notice on the defendant, and, therefore, the lack thereof did not deprive the court of subject matter jurisdiction; furthermore, the court did not need to reach the merits of whether the defendant's conduct did, in fact, constitute a serious nuisance in order to exercise jurisdiction over this action.

2. The defendant could not prevail on his claim that the court improperly rendered judgment for the plaintiff because his acts or omissions did not constitute a serious nuisance within the meaning of § 47a-15 (C): although the defendant claimed that the court's decision relied on a subordinate, erroneous finding that the defendant had harassed another resident, the court did not make that finding and, instead, made clear that its decision in favor of the plaintiff was based on the condition of the defendant's apartment; moreover, the record supported the court's conclusion that the condition of the defendant's apartment constituted a serious nuisance because it presented an immediate and serious danger to the safety of the other tenants.

3. The defendant's claims that the trial court made clearly erroneous factual findings regarding whether the plaintiff reasonably accommodated him and that the court's findings were the result of implicit bias were not reviewable, the defendant having failed to brief the claims adequately: the defendant's briefs before this court were completely devoid of any legal analysis, as his argument mostly restated portions of the record, without providing any context or explanation of how those facts supported or related to his legal claims; moreover, the defendant failed to explain why either of the two authorities that he cited, an Iowa criminal case and an American Bar Association publication, were instructive in light of the facts of this case, or how the specific findings he challenged were relevant to the court's judgment.

Argued September 21, 2021—officially released January 4, 2022

*Procedural History*

Summary process action, brought to the Superior Court in the judicial district of New London, Housing Session at Norwich, and tried to the court, *Hon. Francis J. Foley*, judge trial referee; judgment for the plaintiff,

from which the defendant appealed to this court. *Affirmed.*

*John L. Giulietti*, for the appellant (defendant).

*Lloyd L. Langhammer*, for the appellee (plaintiff).

*Opinion*

CLARK, J. In this summary process action, the defendant, Bruce Stevens, appeals from the trial court's judgment of possession rendered in favor of the plaintiff, the Housing Authority of the City of New London. The defendant claims that the court (1) lacked subject matter jurisdiction because the plaintiff failed to deliver to the defendant a pretermination, or *Kapa*,[1] notice prior to commencing its summary process action against him, (2) improperly found that his conduct constituted a serious nuisance within the meaning of General Statutes § 47a-15 (C), and (3) made certain factual findings that are not supported by the evidentiary record. We affirm the judgment of the trial court.

The record reveals the following facts and procedural history that are relevant to our resolution of the defendant's appeal. In 2013, the defendant entered into a written lease with the plaintiff for an apartment in a public housing complex for persons with disabilities and the elderly. In 2019, the defendant, an individual with psychiatric disabilities, was hospitalized on several occasions. On March 26, 2019, the police escorted the defendant from his apartment to an ambulance that took him to the Pond House, which is a behavioral health unit located within the Lawrence and Memorial Hospital. An officer involved in that incident subsequently informed Avalon LeBlanc, the plaintiff's property manager, that, given what the officer had observed while escorting the defendant from the apartment, the apartment should be condemned. Later that day, LeBlanc and a maintenance worker entered the defendant's apartment. LeBlanc took photographs of the hallway adjacent to the defendant's apartment door and the interior of his apartment.

The next day, March 27, 2019, the plaintiff served on the defendant a notice to quit possession. The notice to quit indicated, among other things, that the defendant wilfully caused substantial destruction to his dwelling unit by ripping up tiles from the floor, rendering appliances inoperable, clogging the sink and toilet, and filling the apartment with trash and other debris that had left the unit uninhabitable, constituting a serious nuisance in violation of § 47a-15 (B). The notice to quit also alleged that the defendant's conduct presented an immediate and serious danger to the safety of other tenants, constituting a serious nuisance in violation of § 47a-15 (C), because the defendant had harassed another resident and dragged bags of trash down the stairs and through common areas, leaving behind a trail of food and other refuse.[2]

On April 17, 2019, the plaintiff commenced this summary process action by serving on the defendant a summons and complaint. The complaint alleged two claims sounding in serious nuisance, which were identical to

the allegations in the notice to quit.[3] Thereafter, the defendant filed an answer and special defenses and a motion to dismiss. The motion to dismiss asserted, inter alia, that the acts alleged in the notice to quit did not constitute a serious nuisance and that the trial court consequently lacked subject matter jurisdiction because the plaintiff had failed to issue the pretermination notice required in summary process actions when an eviction is based upon grounds other than serious nuisance or another exception set forth in § 47a-15. The plaintiff filed a memorandum in opposition to the defendant's motion to dismiss. All matters, including the defendant's motion to dismiss challenging the court's subject matter jurisdiction, were consolidated for trial, which commenced on October 1, 2019.

At trial, Virginia Watrous, a resident in the building and the head of the tenants association, testified that she was sitting in her apartment at approximately 8 o'clock one evening when she heard an "ungodly noise by [her] door." When she got up to investigate the noise, she noticed that someone had slipped a floor tile under her apartment door. About forty-five minutes later, she observed that another tile was being pushed under her door. When she opened the door, she saw the defendant standing against the wall across from her apartment. She subsequently filed with the property manager a written complaint in which she claimed that the defendant had scared her during that incident.

LeBlanc, the plaintiff's property manager, testified about what she observed when she inspected the defendant's apartment. She also described thirteen photographs of the defendant's apartment, which were entered into evidence. LeBlanc stated that the defendant had thrown garbage in the hallway outside of his apartment. The trash was strewn about, the floor was wet, and bags of garbage impeded an exit, which presented a safety concern. According to LeBlanc, the interior of the apartment was filthy and had a very bad odor; something had been smeared all over the walls; dishes containing spoiled food were scattered throughout the apartment; there were piles of soggy bags of trash; rotting food and grease covered the oven, stove and kitchen walls, which presented a fire hazard; the kitchen sink was clogged and full of greasy, dirty water and dishes; the toilet was unusable because multiple household items had been stuffed into the bowl; and there was standing water on the bathroom floor. LeBlanc further testified that she had to step over bags of garbage and there was no clear pathway through the apartment. The defendant's personal belongings were in disarray and were stacked four feet high in some places, "similar to . . . a hoarding situation." Additionally, the smoke alarms were inoperable because the batteries had been removed, floor tiles had been ripped up from the entryway to the kitchen, and the refrigerator was not working because the circuit breaker had

been tripped. LeBlanc also testified that the defendant never submitted maintenance requests to report any of these issues.

The defendant testified at length about his physical and mental health issues. He claimed that he had picked up tiles that had come loose from his floor because he is diabetic and did not want to cut his feet. He only placed the tiles under Watrous' door to make a maintenance complaint.

On October 4, 2019, following the close of evidence, the court issued its memorandum of decision. With respect to count one of the plaintiff's complaint alleging a serious nuisance in violation of § 47a-15 (B), the court found that the plaintiff failed to prove that the defendant substantially or wilfully had destroyed part of his apartment and rendered judgment in favor of the defendant. With respect to the second count alleging a serious nuisance in violation of § 47a-15 (C), the court found that the condition of the apartment presented "an immediate and serious danger to the safety of other tenants of the building." Accordingly, the court rendered judgment of possession in favor of the plaintiff. This appeal followed. Additional facts and procedural history will be set forth as necessary.

I

The defendant's first claim is that, because his conduct did not constitute a serious nuisance within the meaning of § 47a-15 (C), the plaintiff's failure to serve him with a pretermination notice deprived the court of subject matter jurisdiction. The plaintiff counters that no pretermination notice was required because the plaintiff had alleged that the defendant had created a serious nuisance within the meaning of § 47a-15 (C).[4] We agree with the plaintiff.

We begin by setting forth our standard of review and a brief overview of the statutory scheme that governs summary process actions. "[S]ummary process is a special statutory procedure designed to provide an expeditious remedy. . . . It enable[s] landlords to obtain possession of leased premises without suffering the delay, loss and expense to which, under the common-law actions, they might be subjected by tenants wrongfully holding over their terms. . . . Summary process statutes secure a prompt hearing and final determination. . . . Therefore, the statutes relating to summary process must be narrowly construed and strictly followed." (Internal quotation marks omitted.) *Bayer* v. *Showmotion, Inc.*, 292 Conn. 381, 388, 973 A.2d 1229 (2009).

"Pursuant to § 47a-15, before a landlord may proceed with a summary process action, *except in those situations specifically excluded*, the landlord must first deliver a [pretermination] notice to the tenant specifying the alleged violations . . . ." (Emphasis added; internal quotation marks omitted.) *Josephine Towers,*

*L.P.* v. *Kelly*, 199 Conn. App. 829, 836, 238 A.3d 732, cert. denied, 335 Conn. 966, 240 A.3d 281 (2020). A pretermination notice provides the tenant with an opportunity to remedy the violations and avoid a summary eviction. *St. Paul's Flax Hill Co-operative* v. *Johnson*, 124 Conn. App. 728, 734–35, 6 A.3d 1168 (2010), cert. denied, 300 Conn. 906, 12 A.3d 1002 (2011). When a "landlord elects to proceed under sections 47a-23 to 47a-23b, inclusive, to evict based on . . . conduct by the tenant which constitutes a serious nuisance"; General Statutes § 47a-15; however, a pretermination notice is not required.. Section 47a-15 defines " 'serious nuisance' " in relevant part as "(B) substantial and wilful destruction of part of the dwelling unit or premises [or] (C) conduct which presents an immediate and serious danger to the safety of other tenants . . . ."

In the present case, the notice to quit alleged that the plaintiff was terminating the defendant's tenancy because his conduct constituted a serious nuisance under § 47a-15 (B) and (C). The plain and unambiguous language of § 47a-15 makes clear that the plaintiff was therefore not required to issue the defendant a pretermination notice. It unequivocally provides that a pretermination notice is not required when the landlord seeks to evict, pursuant to §§ 47a-23 to 47a-23b, inclusive, based on circumstances constituting a serious nuisance. See *Cardinal Realty Investors, LLC* v. *Bernasconi*, 287 Conn. 136, 138 n.3, 946 A.2d 1242 (2008) ("[b]ecause the plaintiff alleged that the conditions in the defendant's room constituted a serious nuisance, the provisions of § 47a-15 requiring . . . a [pretermination] notice . . . did not apply"). When a landlord seeks to recover possession of leased property on the basis of a serious nuisance, "[a] landlord may simply serve a notice to quit alleging serious nuisance and, if appropriate, move to the next step." (Footnote omitted.) *Josephine Towers, L.P.* v. *Kelly*, supra, 199 Conn. App. 837.

Notwithstanding the plain language of § 47a-15, the defendant claims that, under the specific facts of this case, he was entitled to a pretermination notice and the lack thereof deprived the court of subject matter jurisdiction. His claim is premised entirely upon his contention that his conduct did not constitute a serious nuisance within the meaning of § 47a-15. The defendant, however, mistakenly conflates the court's subject matter jurisdiction with the merits of the plaintiff's summary process claim.

"[B]ecause [a] determination regarding a trial court's subject matter jurisdiction is a question of law, our review is plenary." (Internal quotation marks omitted.) *Housing Authority* v. *Rodriguez*, 178 Conn. App. 120, 126, 174 A.3d 844 (2017). "Subject matter jurisdiction involves the authority of the court to adjudicate the type of controversy presented by the action before it.

. . . [A] court lacks discretion to consider the merits of a case over which it is without jurisdiction . . . .” (Internal quotation marks omitted.) *Hlinka* v. *Michaels*, 204 Conn. App. 537, 540–41, 254 A.3d 361 (2021).

“There is no doubt that the Superior Court is authorized to hear summary process cases; the Superior Court is authorized to hear all cases except those over which the probate courts have original jurisdiction. . . . The jurisdiction of the Superior Court in summary process actions, however, is subject to [certain] condition[s] precedent.” (Citation omitted; internal quotation marks omitted.) *Presidential Village, LLC* v. *Perkins*, 332 Conn. 45, 56, 209 A.3d 616 (2019). “Our Supreme Court has stated that [a]s a condition precedent to a summary process action, proper notice to quit is a jurisdictional necessity. . . . Simply put, before a landlord may pursue its statutory remedy of summary process, the landlord must prove compliance with all of the applicable preconditions set by state and federal law for the termination of the lease.” (Internal quotation marks omitted.) *Housing Authority* v. *Brown*, 129 Conn. App. 313, 317, 19 A.3d 252 (2011).

In general, the conditions that must be met prior to the commencement of a summary process action are set forth in § 47a-23.[5] To invoke the court’s subject matter jurisdiction over a summary process action, a landlord must therefore, at a minimum, prove compliance with § 47a-23, which requires a landlord seeking to terminate a lease or rental agreement for serious nuisance to deliver to the occupant or lessee a notice to quit possession. In contrast to a pretermination notice, which provides the tenant with an opportunity to remedy violations and does not terminate a tenancy, “service of a notice to quit possession pursuant to § 47a-23 is typically an unequivocal act terminating a lease agreement with a tenant.” *St. Paul’s Flax Hill Co-op* v. *Johnson*, supra, 124 Conn. App. 735. The notice to quit must be in writing, notify the tenant that the tenant must quit possession or occupancy of the premises on a specified date, include the address of the property, and state “the reason or reasons for the notice to quit possession or occupancy using the statutory language or words of similar import.” General Statutes § 47a-23 (b).

It follows that, for purposes of determining whether it had subject matter jurisdiction over the plaintiff’s summary process action, the court in the present case needed to determine only whether the notice to quit issued by the plaintiff complied with § 47a-23. The court did not need to reach the merits of whether the defendant’s conduct did, in fact, constitute a serious nuisance in order to exercise jurisdiction over this action.

“[T]o establish subject matter jurisdiction, the court must determine that it has the power to hear the general class [of cases] to which the proceedings in question

belong." (Internal quotation marks omitted.) *Lampasona* v. *Jacobs*, 209 Conn. 724, 728, 553 A.2d 175, cert. denied, 492 U.S. 919, 109 S. Ct. 3244, 106 L. Ed. 2d (1989). Although, in certain cases, "it is necessary to examine the facts of the case to determine whether it is within a general class that the court has power to hear"; id.; see, e.g., id., 730 (whether notice was proper required inquiry into defendant's status as resident of mobile home park to determine which summary process provision controlled); *Colonial Investors, LLC* v. *Furbush*, 175 Conn. App. 154, 165, 167 A.3d 987 (whether court lacked jurisdiction because notice to quit was defective for failure to state properly total rent owed required examination of facts), cert. denied, 327 Conn. 968, 173 A.3d 953 (2017); this is not such a case. The plaintiff commenced this summary process action on the grounds that the defendant's conduct constituted a serious nuisance within the meaning of § 47a-15 (B) and (C). Its notice to quit included the requisite language set forth in § 47a-23 (b), and the defendant did not claim that the notice to quit was otherwise defective in form or delivery. Accordingly, the plaintiff's undisputed compliance with the requirements of § 47a-23 provided the court with subject matter jurisdiction over the plaintiff's claims.

## II

The defendant also claims that the court improperly rendered judgment for the plaintiff because his acts or omissions did not constitute a serious nuisance within the meaning of § 47a-15 (C). We disagree.

"[T]he existence of a nuisance generally is a question of fact, for which we invoke a clearly erroneous standard of review . . . ." (Internal quotation marks omitted.) *Sproviero* v. *J.M. Scott Associates, Inc.*, 108 Conn. App. 454, 467, 948 A.2d 379, cert. denied, 289 Conn. 906, 957 A.2d 873 (2008). "A finding of fact is clearly erroneous when there is no evidence in the record to support it . . . or when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. . . . Because it is the trial court's function to weigh the evidence and determine credibility, we give great deference to its findings. . . . In reviewing factual findings, [w]e do not examine the record to determine whether the [court] could have reached a conclusion other than the one reached. . . . Instead, we make every reasonable presumption . . . in favor of the trial court's ruling." (Internal quotation marks omitted.) *Fairchild Heights, Inc.* v. *Dickal*, 118 Conn. App. 163, 169, 983 A.2d 35 (2009), aff'd, 305 Conn. 488, 45 A.3d 627 (2012).

Additionally, the trial court, "as the sole arbiter of credibility, is free to accept or reject, in whole or in part, the testimony offered by either party." (Internal quotation marks omitted.) *Housing Authority* v.

*Brown,* supra, 129 Conn. App. 316. It is "the court's exclusive province to weigh the conflicting evidence [and] determine the credibility of witnesses . . . . Thus, if the court's dispositive finding . . . was not clearly erroneous, then the judgment must be affirmed. . . . The function of the appellate court is to review, and not retry, the proceedings of the trial court." (Internal quotation marks omitted.) *Sullivan* v. *Lazzari,* 135 Conn. App. 831, 846, 43 A.3d 750, cert. denied, 305 Conn. 925, 47 A.3d 884 (2012).

The second count in the plaintiff's complaint alleged in relevant part that the defendant was "in violation of . . . § 47a-15 (C), which defines 'serious nuisance' as 'conduct which presents an immediate and serious danger to the safety of other tenants . . . .' Specifically . . . the defendant harassed another resident; this includes the defendant repeatedly placing a floor tile under [Watrous'] door and then confronting her when she questioned him about it. The defendant also dragged bags of trash from his apartment down two flights of stairs to the exterior of the building, trailing food and other refuse the entire way. These actions displayed by the defendant threaten the safety of other tenants . . . ."

The defendant claims that the court improperly found that his conduct was "an immediate and serious danger to the safety of the other tenants" because that finding relied upon a subordinate, erroneous finding that the defendant had harassed Watrous. The court never made any findings about whether the defendant harassed Watrous, however. Rather, in its memorandum of decision, the court merely summarized Watrous' testimony about the defendant placing tiles under her door. The court did not conclude that the defendant, in fact, harassed Watrous or that this conduct was essential to its finding that the defendant's conduct amounted to a serious nuisance under § 47a-15 (C). On the contrary, the court's decision makes clear that its finding in favor of the plaintiff on count two was based on the condition of the defendant's apartment, not the defendant's conduct toward Watrous.

The record supports the court's conclusion that the condition of the apartment constituted a serious nuisance because it presented an immediate and serious danger to the safety of the other tenants. In addition to the thirteen photographs of the defendant's apartment that were entered into evidence, the court heard from LeBlanc, who testified that there were piles of garbage and dishes with rotten food scattered throughout the apartment, both the sink and toilet were inoperable because they were clogged, and the oven and stove were covered in grease, which presented a fire hazard. There was ample evidence, therefore, to support the court's conclusion that the condition of the apartment was "squalid, unsanitary, and a public health threat to

the other tenants,'' which presented an immediate and serious danger to the safety of the other tenants. Consequently, the court's finding that the defendant's conduct constituted a serious nuisance pursuant to § 47a-15 (C) was not clearly erroneous.

### III

Although difficult to discern from his brief, the defendant also appears to challenge certain factual findings as clearly erroneous and claims, without support, that two of the court's findings indicate that the court was implicitly biased against him. We decline to review these claims because he did not adequately brief them.

The following additional procedural background provides the necessary context for consideration of the defendant's claims. After filing this appeal, the defendant filed a motion for articulation of the court's decision. Specifically, he sought articulation of the court's finding that the plaintiff had reasonably accommodated the defendant during the months of January through May, 2019. The court's finding in this respect apparently related to the defendant's special defense alleging that, because of his disability, he was entitled to an accommodation by way of additional time to prepare for a reinspection of his apartment.[6] After the trial court denied the motion for articulation, the defendant sought review in this court. We granted review and ordered the court to articulate the factual and legal basis for its determination that the defendant was reasonably accommodated. The court issued its articulation on February 6, 2020, explaining that, although there was no evidence in the record that the defendant ever had requested a reasonable accommodation, the plaintiff nonetheless had attempted to accommodate the defendant.

On appeal, the defendant has not raised a claim under the Americans with Disabilities Act of 1990, 42 U.S.C. § 12101 et seq. (2018), or any other state or federal law or regulation affording protections to an individual with disabilities. Instead, he challenges as erroneous the court's finding that he was reasonably accommodated and claims that the court engaged in implicit bias against him as a person with disabilities. His briefs before this court, however, are completely devoid of any legal analysis. The defendant's argument mostly restates portions of the record, without providing any context or explanation of how those facts support or relate to his legal claims. The only authorities he cites are an Iowa criminal case discussing a defendant's request for an implicit bias jury instruction and an American Bar Association publication about implicit biases and disabilities. The defendant has failed to explain why either authority is instructive in light of the facts of this case or how the specific findings he challenges are relevant to the court's judgment.

Our appellate courts consistently have held that "[a]nalysis, rather than mere abstract assertion, is required in order to avoid abandoning an issue by failure to brief the issue properly." (Internal quotation marks omitted.) *Burton* v. *Dept. of Environmental Protection*, 337 Conn. 781, 803, 256 A.3d 655 (2021); see also *Kelib* v. *Connecticut Housing Finance Authority*, 100 Conn. App. 351, 353, 918 A.2d 288 (2007). Where a party cites no law and provides no analysis in support of a claim, we decline to review it. *State* v. *Holmes*, 176 Conn. App. 156, 185, 169 A.3d 264 (2017), aff'd, 334 Conn. 202, 221 A.3d 407 (2019). We therefore do not address the defendant's claims concerning whether he was reasonably accommodated or that the court's findings were the result of implicit bias.

The judgment is affirmed.

In this opinion the other judges concurred.

[1] *Kapa Associates* v. *Flores*, 35 Conn. Supp. 274, 408 A.2d 22 (1979).

[2] General Statutes § 47a-15 provides in relevant part: "Prior to the commencement of a summary process action, *except* in the case in which the landlord elects to proceed under sections 47a-23 to 47a-23b, inclusive, to evict based . . . on conduct by the tenant which constitutes a serious nuisance . . . the landlord shall deliver a written notice to the tenant specifying the acts or omissions constituting the breach and that the rental agreement shall terminate upon a date not less than fifteen days after receipt of the notice. If such breach can be remedied by repair by the tenant or payment of damages by the tenant to the landlord, and such breach is not so remedied within such fifteen-day period, the rental agreement shall terminate . . . . For the purposes of this section, 'serious nuisance' means . . . (B) substantial and wilful destruction of part of the dwelling unit or premises [or] (C) conduct which presents an immediate and serious danger to the safety of other tenants or the landlord . . . ." (Emphasis added.)

[3] The complaint also alleged five counts for breach of the lease agreement. On the morning of trial, however, the plaintiff withdrew those counts.

[4] The plaintiff did not cross appeal the court's judgment against it on count one of its complaint alleging a serious nuisance under § 47a-15 (B).

[5] General Statutes § 47a-23 (a) provides in relevant part: "When the owner or lessor . . . desires to obtain possession or occupancy of any land or building, [or] any apartment in any building . . . and (1) when a rental agreement or lease of such property, whether in writing or by parol, terminates for any of the following reasons . . . (G) nuisance, as defined in section 47a-32, or serious nuisance, as defined in section 47a-15 . . . such owner or lessor . . . shall give notice to each lessee or occupant to quit possession or occupancy of such land, building, [or] apartment . . . at least three days before the termination of the rental agreement or lease, if any, or before the time specified in the notice for the lessee or occupant to quit possession or occupancy."

Section 47a-23 (b) prescribes the form of the notice to quit. It provides in relevant part that the notice shall be in a writing that substantially follows this template: "I (or we) hereby give you notice that you are to quit possession or occupancy of the (land, building, apartment . . .), now occupied by you at (here insert the address, including apartment number . . . as applicable), on or before the (here insert the date) for the following reason (here insert the reason or reasons for the notice to quit possession or occupancy using the statutory language or words of similar import, also the date and place of signing notice). . . ." (Internal quotation marks omitted.) General Statutes § 47a-23 (b).

[6] On April 2, 2019, six days after it served the defendant with the notice to quit, the plaintiff apparently attempted to deliver to the defendant a letter notifying the defendant that he had failed his apartment inspection on March 26, 2019, and that his apartment was scheduled for a reinspection on April 18, 2019.